IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

SHARON STOWERS,

        Plaintiff,

V.                                 CIVIL ACTION NO. 3:05-0751

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

**<u>FINDINGS AND RECOMMENDATION</u>**

        In this action, filed under the provisions of 42 U.S.C. §1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying her application for supplemental security income based on disability.  The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

        Plaintiff protectively filed her application on September 22, 2003, alleging disability as a consequence of trichotillomania, diabetes, high blood pressure, obesity, depression, arthritis, back pain and female problems.  On appeal from an initial and reconsidered denial, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

        At the time of the administrative decision, plaintiff was fifty-one years of  age and had obtained a GED.  Her past relevant employment experience consisted of work as a housekeeper

and adult care giver.  In his decision, the administrative law judge determined that plaintiff suffers from "chronic cervical and lumbosacral strain, osteoarthritis, non-insulin dependent diabetes mellitus, major depressive disorder with features of posttraumatic stress disorder, and trichotillomania," impairments which are severe.  Though concluding that plaintiff was unable to perform her past work,[1] the administrative law judge found she had the residual functional capacity for a limited range of light level work.  On the basis of this finding, and relying on Rules 202.20 and 202.13 of the medical-vocational guidelines[2] and the testimony of a vocational expert,  he  found plaintiff not disabled.

Review of the record reveals deficiencies which will require remand for further proceedings.  Plaintiff's medical problems include diabetes, which reports indicate is fairly well-controlled with oral medication; however, there is evidence of diabetic neuropathy in the lower extremities where sensory abnormalities have been detected.  While these do not affect plaintiff's gait, she does allege pain with walking.

Plaintiff also has problems with neck, back, shoulder and knee pain.  A CT scan of the back in April 1999 showed "pronounced" facet hypertrophic degenerative changes at L4-5 bilaterally with stenosis of the spinal canal at the L5 level and probable broad-based protrusion at L4-5. Dr. Stephen Nutter, during his consultative examination on November 24, 2003, observed plaintiff was uncomfortable in the supine position and had pain and tenderness in the right shoulder, greater in the scapular area, as well as crepitus in both shoulders, pain, tenderness and crepitation

---

[1]  This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2]  20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

in both knees with some swelling, pain and tenderness in the ankles.  The paraspinal muscles and spinous processes in the cervical and dorsolumbar spine were tender, and range of motion was reduced in these areas.  Plaintiff was unable to balance on one leg at a time and displayed sensory deficits to pinprick and soft touch in portions of both feet.  She was unable to walk on her heels or to perform tandem walking due to poor balance.  She was also unable to squat due to knee pain.  Dr. Nutter felt she suffered from chronic cervical and lumbosacral strain and probable osteoarthritis causing pain in her joints.

The main source of plaintiff's treatment was the Ebenezer Medical Outreach Center ("EMO"), a facility for low income patients.  She was seen primarily by certified nurse practitioners who referred her to specialists as needed.  Reports reflect visits for elbow pain and symptoms of carpal tunnel syndrome, which apparently abated within one month, hypertension, controlled with medication, inability to sleep and continuing back pain.  On August 19, 2003, plaintiff was noted to be crying because of pain in her tailbone, right leg and right knee.  Exam revealed decreased sensation in the lower extremities with no sensation in the right and left great toe or in the right mid-foot.  It was felt the sensory losses were due to diabetes and plaintiff was referred to a podiatrist who diagnosed possible neuropathy or radiculopathy and foot pain.  A February 3, 2004, report documents complaints of neck and shoulder pain and findings of decreased range of motion in both areas.  Plaintiff was given the pain medication Ultram to try and reported the following month that it was helping her pain.  Exams continued to reveal back tenderness, however.  Following exam on June 22, 2004, a certified nurse practitioner expressed the opinion that, due to the combination of plaintiff's osteoarthritis, degenerative joint disease and depression, she would be unable to complete even the eight hours of community service required each month by the housing authority.

3

Plaintiff was treated for depression with medication.   On November 10, 2003, the Commissioner had her evaluated by psychologist Lisa Tate who noted reports of feeling depressed three to four times per month, two days at a  time.  She also told this examiner that she had a seventeen year history of pulling out her hair.  Mental status evaluation revealed a depressed mood with a broad and reactive affect; tearfulness at times; normal insight and memory; fair judgment; and, mildly impaired concentration.  Ms. Tate diagnosed major depressive disorder with features of post-traumatic stress disorder and trichotillomania.[3]  Social functioning was assessed as normal based upon plaintiff's interaction with this examiner.

In evaluating plaintiff's credibility and concluding that it was "only fair at best," the administrative law judge noted that, over the prior two years (presumably beginning in 2003), plaintiff had only a "handful of visits" to EMO.   In fact, she went to this facility at least ten times in those two years, with seven of those visits in 2003, an average of more than once every two months and certainly more than "a handful."   The administrative law judge also noted plaintiff had made no emergency room visits to this facility (EMO) and did not have hospitalization for exacerbation of pain.  It is surprising that the administrative law judge did not realize that EMO is not a facility with an emergency room.  Further, he should have understood, as plaintiff notes in her brief, that if she is receiving treatment at this facility she does not have a medical card[4] or the resources to seek the type of treatment she needs.  Because of this, she cannot have extensive testing,

---

[3]  The essential feature of this disorder is the recurrent pulling out of one's hair that results in noticeable hair loss.  See, Diagnostic and Statistical Manual of Mental Disorders, 4th Ed., American Psychiatric Association, 1994 at 618.

[4]  Plaintiff actually stated at the hearing that, because she did not have a medical card, she had to do her own physical therapy-type exercises after her release from the hospital in June of 2003.

physical therapy or other alternative treatment for her problems.  As plaintiff notes, the fact that this is an SSI application combined with plaintiff's reports to medical providers about her financial situation as well as the nurse practitioner's note about plaintiff having to do community service for the housing authority should have been enough for him to understand the reasons for her lack of treatment.  Furthermore, as plaintiff points out, when she did seek emergency room treatment and was admitted to the hospital in June 2003 for a urinary tract infection that had turned into septicemia, the admission report reflects she did not seek treatment sooner because she "has no health insurance and did not feel she could have medical care."  The administrative law judge's findings in this regard suggest that, contrary to governing procedent, he penalized plaintiff for failing to seek treatment when he knew or should have known she could not afford it.  Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986).

      The administrative law judge's findings, particularly with respect to plaintiff's pain and depression being controlled with medication, also indicate he did not read the record closely or else ignored evidence inconsistent with his conclusions.  While plaintiff admitted at the hearing and to her doctors that the medication Effexor was helping her depression, the most recent medical report from EMO reflects she was crying during the exam and had poor eye contact, prompting the examiner to suggest she be referred for counseling.[5]  Further, while a medical report from March 30, 2004, reflects plaintiff's comment that Ultram was helping her neck and shoulder pain, she testified that this medication was not helpful at the time of the hearing.  These factors cast doubt on the conclusions drawn by the administrative law judge about the effectiveness of medication and

---

    [5]  Although plaintiff was agreeable to seeing a counselor, there is no indication that this was ever accomplished.

certainly about the credibility of plaintiff's testimony.  Remand is thus necessary for a reevaluation of the evidence and for new credibility findings.

On remand, further consideration should also be given to plaintiff's residual functional capacity in light of the evidence.  While no examiner observed a limp or antalgic gait, the evidence of sensory abnormalities and neuropathy or radiculopathy in plaintiff's lower extremities and feet certainly suggests she would have restrictions on the length of time she could be on her feet, both at one time and during the day as a whole.  An assessment from Dr. Nutter, from the treating podiatrist or other doctor familiar with her lower extremity and feet problems would have been helpful.  Updated evidence about these conditions should be obtained and considered on remand. If a consultative examination is obtained, the examiner should be requested to either complete a residual functional capacity assessment form or to provide detailed comments about the effect of these conditions on plaintiff's ability to stand and walk.  The parties should also be allowed to submit additional evidence.

## **RECOMMENDATION**

In light of the foregoing, it is **RESPECTFULLY RECOMMENDED** that this case be remanded to the Commissioner for further proceedings consistent with these Findings and Recommendation.

Plaintiff and defendant are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 72(b), Fed.R.Civ.P., the parties  may,

within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of  this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection.  The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation.  Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this   Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to all counsel of record.

DATED:  May 3, 2007

MAURICE  G.  TAYLOR,  JR.
UNITED  STATES  MAGISTRATE  JUDGE